UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ROBERT HOFFMAN,<br>    Plaintiff,<br>v.<br><br>SARA S. GDOWSKI,<br>    Defendant.<br>_____/ | Case No.: 19-13691<br><br>Linda V. Parker<br>United States District Judge<br><br>Curtis Ivy, Jr.<br>United States Magistrate Judge |

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 49)

### I.  PROCEDURAL HISTORY

Plaintiff Robert Hoffman filed this prisoner civil rights suit on December 16, 2019, without the assistance of counsel, alleging violations of the First and Eighth Amendments to the United States Constitution.  (ECF No. 1).  It was referred to the undersigned for all pretrial matters.  (ECF No. 27).  Hoffman was incarcerated in the prison where Gdowski worked as a nurse practitioner.   Plaintiff alleges he was given constitutionally inadequate medical treatment for issues with his left hand and that the defendant retaliated against him.  After a period of discovery, Defendant Gdowski moved for summary judgment.  (ECF No. 49).  The motion is fully briefed (ECF Nos. 61, 62) and ready for report and recommendation.

For the reasons discussed below, the undersigned recommends that Defendant's motion for summary judgment be granted in part and denied in part.

## II. CONTESTED AND UNCONTESTED FACTS

Plaintiff Hoffman was diagnosed with Depuytrens contractures in 1993. (ECF No. 50, PageID.360, Medical Records). This condition affects the hands and causes a tightening of tissue resulting in some fingers staying bent towards the palm. Hoffman sent a "kite," or letter, to healthcare on September 24, 2019, requesting to be seen about his hands. He the pinkie finger on his left hand was dislocated and painful and that his left thumb was "severely" contracted. These issues made his activities of daily living "very burdensome." (*Id.* at PageID.357). He was seen by a non-party nurse Carmita Jones on September 27, 2019. On objective examination, Ms. Jones noted his hands were tender, there was pain with movement, he had spasms in his hand, and his hands had "noted deformity."[1] (*Id.* at PageID.358-59). The "deformity" is shown in a photograph of the left hand— the pinkie finger appears dislocated at a joint; to the untrained eye, the photo does not depict a deformed thumb, but the parties agree that the thumb had a contracture issue. (*Id.* at PageID.372). Ms. Jones scheduled Hoffman for a visit with his provider, defendant Gdowski, which occurred on October 2, 2019.

---

[1] Plaintiff presented to healthcare with complaints of problems in both hands. He stipulated to dismissing a claim related to his right hand here. (ECF No. 31).

The parties diverge in their characterizations of the facts beginning at the provider visit. Gdowski noted contractures and Depuytrens cords in the left hand. She submitted a "407 request" for a surgical consultation. (ECF No. 50, PageID.361-63). She also gave work restrictions of light duty, no lifting more than five pounds, and no repetitive movements. (*Id.* at PageID.368). Gdowski says the camera was not working at the time of that visit, so she could not take pictures of Hoffman's hands. (ECF No. 49-2, PageID.321, ¶ 2, Gdowski Affidavit). Gdowski ordered photographs of Hoffman's hands to be taken October 8, 2019. (ECF No. 50, PageID.369). As to the 407 request, she says a description of Hoffman's hand from 2012 auto-populated in the physical exam portion of a provider note which was used in the request. She did not search through Hoffman's medical records to find an old description. "If [she] had realized the information was outdated, [she said she] would have removed it from [her] note." (ECF No. 49-2, PageID.321, at ¶ 3).

The 407 Gdowski originally submitted states in full:

> Patient was diagnosed with Dupuytrens contractures in 1993. Today he states the pain is getting worse and he has increased limited range of motion. He states he is barely able to use his hands at all. He states the pain is aching in nature. He is currently taking Mortrin 400mg TID which he states barely helps the pain. He denies numbness and tingling. he states at his skin keeps cracking at the base of his third and [sic]

3

(ECF No. 50, PageID.365).  On October 9, 2019, the request was denied.  The reviewing physician stated: "Medical necessity not demonstrated at this time.  Provider to supply objective findings consistent with ADL [activities of daily living] deficit." (*Id.* at PageID.375).

In a kite dated October 28, 2019, Hoffman asserted that Gdowski understated his condition in the request.[2]  He requested another 407 request reflecting his current condition.  (ECF No. 50, PageID.376).  Four days later he presented to Gdowski to discuss the matter.  He gave Gdowski a printout of a description of the left hand that is more detailed than the description in the original 407 request.  (*Id.* at PageID.378).  Gdowski used this description as well as an explanation of x-ray data and failed outpatient therapies in a new request dated November 1, 2019.  (*Id.* at PageID.382).  This request for a surgery consultation was granted.  (*Id.* at PageID.385).

Hoffman was seen by an orthopedic surgeon on December 11, 2019, and had corrective surgery on his left hand on December 30, 2019.  (*Id.* at PageID.388-96, 407-10).  Following his surgery, Hoffman returned to the prison and reported no pain as the nerve block was still effective.  (ECF No. 50, PageID.412).  Gdowski ordered Tylenol #4 for three days.  The day after surgery, Hoffman complained of

---

[2] On this date, Hoffman learned of the denial when he received medical records he purchased.  (ECF No. 61, PageID.539, ¶ 27).

an "unusual amount of pain" worse than after previous surgeries. He was given a one-time extra dose of Tylenol #4 around 1 a.m. (*Id.* at PageID.419). He visited healthcare later that day because of his complaints of pain. He was directed to keep taking his scheduled Tylenol #4 three times per day. (*Id.* at PageID.421). On January 2, 2020, the day his Tylenol #4 prescription ended, he saw Gdowski for continued complaints of pain. She noted he had been taking Motrin and Tylenol #4 four times a day but still complained of pain. She submitted a request for continuation of Tylenol #4 and ordered that Hoffman continue on the Motrin. (*Id.* at PageID.425). In the request, Gdowski wrote that Plaintiff completed three days of Tylenol #4 "and is still complaining of pain at 5/10." (*Id.* at PageID.426). The request for Tylenol #4 was deferred and healthcare was directed to switch to over-the-counter Tylenol and Motrin for pain management. (*Id.* at PageID.428). Gdowski asserts that she did not underreport Hoffman's pain. (ECF No. 49-2, PageID.324, ¶ 15).

According to Hoffman in his declaration, Gdowski used a description of his hands from 2012, which did not accurately portray the condition during October 2019. (ECF No. 61, PageID.536). In Hoffman's version of events, during his October 2, 2019, encounter with Gdowski, she did not examine his hands, did not take notes on his hands, and did not take photographs of his hands. She told him that she wouldn't type Plaintiff's description because that would make her work

5

too hard, instead she would use a description of his hands from an old medical record. (*Id.* at PageID.536-37). The 2012 description did not include the dislocated pinkie finger or contracted thumb.

Hoffman says that during the provider visit on January 2, 2020, Gdowski refused to give him Tylenol. His Tylenol #4 prescription was not renewed, and he was directed to take Motrin and over-the-counter Tylenol, but he did not have any nor did the prison store. He asked Gdowski for Tylenol from healthcare stock, but Gdowski refused even though she had provided Tylenol to prisoners from the healthcare stock in the past and she knew the prison did not have any he could immediately purchase. (ECF No. 61, PageID.584, Interrogatories). Instead, she advised him to get Tylenol from other prisoners, which is against prison policy. She then told him there would be a lapse in pain treatment because of his grievances. He says he was in pain until January 5, 2020, when he received the Tylenol Gdowski ordered from the pharmacy. (ECF No. 61, PageID.537-38).

On January 3, 2020, Hoffman kited healthcare. He stated he still had "severe pain" in his left hand and needed to be seen urgently. He wrote that Gdowski's comment on January 2, 2020, was retaliation for suing her. (ECF No. 50, PageID.435). On January 8, 2020, Hoffman refused all medical care because he was "taking a stance" and refused to sign a refusal of care form. (*Id.* at PageID.436). The retaliatory comment was in Gdowski's request to continue

6

Tylenol #4—Hoffman perceived the request to state his pain was 5/10 without medication, but he told her that before taking his morning dose of pain medication it was an 8/10, but 5/10 on medication. (*Id.* at PageID.445). In his declaration, Hoffman states that Gdowski told him she minimized his pain for the same reason she refused his request for Tylenol—"because of your grievance, and I wanted you to feel some pain." (ECF No. 61, PageID.537, ¶ 11).

On January 15, 2020, Hoffman had a follow-up appointment with the surgeon. He reported minimal pain that day. (ECF No. 50, PageID.440).

As for the retaliation claim, Gdowski swears she was unaware of any grievances Hoffman filed and the medical care she provided to him was based on her medical judgment and would have been the same regardless of any grievances. (ECF No. 49-2, PageID.325, ¶ 16). Hoffman disputes this. He states he told her he filed a grievance on November 1, 2019 and brought it up again on January 2 and 8, 2020 as the reason for the lapse in pain treatment. (ECF No. 61, PageID.540, ¶ 32). He also cites a December 11, 2019, email sent to Gdowski in which she is informed of Hoffman's grievance about a special accommodation for two blankets and a bottom bunk. Gdowski replied that she renewed those accommodations. (ECF No. 61, PageID.566).

### III.   ANALYSIS AND RECOMMENDATIONS

   A.   Standard of Review

Summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, the Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

That Plaintiff is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz [v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir.

2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

    B.    <u>Discussion</u>

        1.    Deliberate Indifference

Hoffman argues three instances of deliberate indifference: on October 2, 2019, when Gdowski submitted the first request for surgical consult containing an old description, on January 2, 2020, involving Gdowski's request to continue Tylenol #4, and on the same date when she would not give him Tylenol from healthcare stock knowing Hoffman had no access to Tylenol. To establish an Eighth Amendment violation, the prisoner must show that he was deprived of the minimal necessities of civilized life and that prison officials were deliberately indifferent to his needs. *Powell v. Washington*, 720 F. App'x 222, 227-28 (6th Cir. 2017) (citation omitted). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To establish deliberate

indifference, an inmate must satisfy an objective and subjective prong. *Id.* at 834. The objective prong requires a showing that the deprivation alleged is "sufficiently serious," such that he is "incarcerated under conditions posing a substantial risk of serious harm." *Id*. And the subjective prong requires the inmate to show that a prison official "[knew] of and disregard[ed] an excessive risk to inmate health or safety." *Id*. at 837.

      a.    407 Request

Plaintiff was receiving treatment for his hand problems. He had multiple visits with various healthcare professionals at the prison and had over-the-counter pain medication. He characterizes his 407 request claim as a delay in medical care claim, not a denial of care. Accepting Hoffman's characterization, the claim is that but for Gdowski's allegedly inadequate description of the left hand, Hoffman would have had the surgery consult and hand surgery sooner, which would have lessened the time he spent in pain and disfigurement.

When the prisoner's claim is that his condition was not treated adequately, like Hoffman's claim, "medical proof is necessary to assess whether the delay caused a serious medical injury" to satisfy the objective component. *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 898 (6th Cir. 2004) (citing *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742-43 (6th Cir. 2001)). There must be "medical proof that the provided treatment was not an adequate medical treatment of [the inmate's]

11

condition or pain[,]" *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013), and "verifying medical evidence in the record to establish the detrimental effect" of the inadequate treatment, *Blackmore*, 390 F.3d at 898 (citation omitted).

The latter consideration is dispositive. Hoffman says the detrimental effect of the delay in the consultation is the continuation of pain until the surgery. This does not rise to the level of objective deliberate indifference because there is no verifying medical evidence of a *detrimental effect* of the delay in the consultation. *See Dixon v. Hall*, No. 14-6466, 2016 WL 11781885, at *3 (6th Cir. Apr. 5, 2016) ("Even if Dixon's pain constituted a serious medical need, he failed to present verifying medical evidence that the delay in providing him with pain medication, x-rays, or outside medical help caused any serious medical injury."); *Loukas v. Gundy*, 70 F. App'x 245 (6th Cir. 2003) (dismissing delay in care claim when the plaintiff had to walk on a broken foot for 24 days without crutches or pain medication because of a delay in having his foot x-rayed because he did not allege or show that he suffered any detrimental effect from the delay in treatment; that he suffered some discomfort before he received pain medication was not sufficient to state an Eighth Amendment claim); *Smith v. Ozbourne*, 2016 WL 868848, at *2 (W.D. Ky. Mar. 7, 2016) (dismissing Eighth Amendment claim because "Plaintiff has alleged no detrimental effect from the alleged delay in surgery except the continuation of his pain."). Around two weeks after the surgery, Plaintiff's

symptoms were gone. He says he is now pain-free in his left hand, which suggests there was no detrimental effect in waiting until December 30, 2019 to have surgery.

        b.  January 2, 2020

There are two claims that arise from the January 2, 2020 encounter—that Gdowski minimized his report of pain in a request to continue Tylenol #4 and that Gdowski refused to give him regular Tylenol from healthcare stock until Hoffman got the medication from the pharmacy days later.

The first of these claims should be rejected because it appears to come from Hoffman's misinterpretation of the request. Hoffman had a prescription for Tylenol #4 to last for three days after his surgery, ending on January 2, 2020. Gdowski submitted a formal request to continue this medication, but the request was denied and Hoffman was directed to take Motrin and regular Tylenol. In that request, Gdowski wrote Hoffman completed three days of Tylenol #4 "and is still complaining of pain at 5/10." (ECF No. 50, PageID.426). This is what Hoffman reported—after taking his morning dose of Tylenol #4, he still had pain at 5 out of 10. (ECF No. 61, PageID.537, ¶ 13). But Hoffman views the language in the request as stating that he complained of pain at 5/10 before taking medication. That is not accurate. Gdowski's request says that even after taking Tylenol #4 for three days his pain is still at 5/10, meaning he is still experiencing pain despite the

13

medication. No reasonable jury could read this request and conclude that Gdowski was deliberately indifferent to a medical need in her request for continuation of the medication because she recorded what Hoffman reported.

The second claim, that Gdowski refused to provide Tylenol from healthcare stock, was not addressed by Gdowski in her opening or reply brief. Hoffman also did not address the claim as it relates to the objective prong of deliberate indifference. Why this issue was ignored is unclear. The Court must leave the parties to raise their issues on their own. This claim should not be dismissed.

        2.      Retaliation

The retaliation claim relates to the January 2, 2020, claims that Gdowski underreported his pain in the Tylenol #4 request and refused to provide Tylenol from healthcare stock. Hoffman contends she acted in these ways in retaliation for Hoffman's grievances and lawsuit filed against her.

To establish a claim of First Amendment retaliation, a plaintiff must show (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two; in other words, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). "Under the third element, 'the subjective motivation of the defendants is at issue.'"

*Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (quoting *Thaddeus-X*, 175 F.3d at 399). The burden then shifts to the defendant, and "'[i]f the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.'" *Id.* at 267 (quoting *Thaddeus-X*, 175 F.3d at 399).

The claim that Gdowski underreported Plaintiff's pain is not supported by the record, as discussed above. While Hoffman avers that Gdowski told him she unreported his pain as retaliation for protected conduct, the medical records and Hofffman's other sworn statements reflect that Gdowski recorded his pain as Hoffman reported to it to her: after taking medication it is 5/10. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Since a jury could not conclude she underreported his pain, this cannot serve as "adverse action" in a retaliation claim. This claim should be dismissed.

Gdowski did not address Hoffman's other claim that she refused to give him Tylenol until his prescription came in, even though she had given prisoners

15

Tylenol from healthcare stock in the past. Her failure to address the claim precludes summary judgment in her favor.[3]

3. Exhaustion of Administrative Remedies

---

[3] Denial of necessary pain medication is adverse action. *See Smith v. Yarrow,* 78 F. App'x 529, 540 (6th Cir. 2003). Gdowski asserts, generally, that there is no evidence that she took adverse action against Hoffman. Instead, she insists she provided medical care she determined was appropriate based on her medical judgment. (ECF No. 49, PageID.314). Again, she did not address Hoffman's argument about her failure to give him Tylenol from healthcare stock, either in argument or in her affidavit. Hoffman swears he asked her for Tylenol until his prescription came in, but she refused to give it to him although she'd given Tylenol from healthcare stock to prisoners in the past. Gdowski thought it necessary to prescribe the Tylenol, but refused to provide him some in the interim. A reasonable jury could see this as adverse action. That said, the medical records show Hoffman had Motrin when he did not have over-the-counter Tylenol. (*See* ECF No. 50, PageID.423, listing Motrin as one of Hoffman's active medications on January 2, 2020). So presumably he had pain medication, which casts doubt on whether the Tylenol was "necessary pain medication." At any rate, as reasonable inferences are to be drawn in Hoffman's favor, without an affirmative statement that he had Motrin available during this time, we cannot infer that he did in fact have Motrin. Gdowski has not made the case that there is no causal connection between the denial of healthcare stock Tylenol and Hoffman's protected conduct. Her argument on the subject addresses only her lack of knowledge of a grievance Hoffman filed *after* the January 2, 2020, which of course could not serve as the basis for retaliation on January 2, 2020. (*See* ECF No. 62, PageID.632). Gdowski did not address her knowledge of the November 7 or December 6, 2019 grievances or the initiation of this lawsuit. The evidence shows she was aware of the December grievance because she responded to an email about it on December 11, 2019. (ECF No. 61, PageID.566). The evidence before the Court, along with reasonable inferences drawn in Hoffman's favor, establish that Gdowski at least knew of the December grievance and could have known about the lawsuit against her on January 2, 2020. Her sworn statement that she did not take adverse action against Hoffman because of a grievance is contradicted by Hoffman's sworn statements. The Court cannot make credibility determinations at this stage.

16

Gdowski argues Hoffman did not exhaust his claim that she used an old description of his hand in the first 407 request because he did not appeal that grievance through all three steps of the process.

Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e *et seq.*, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Pursuant to Policy Directive 03.02.130, effective March 18, 2019, the administrative remedies available at the MDOC are as follows. First, the inmate must attempt to resolve issues with the staff member involved within two business days of learning about a grievable issue. (ECF 49-5, PageID.352, at ¶ Q). If the issues are not resolved within five business days, the inmate may file a Step I grievance using the appropriate form. (*Id.* at PageID.353, ¶ W). If the grievant is not satisfied with the response at Step I or if he did not receive a timely

17

response, he may file a Step II appeal. (*Id.* at PageID.354, ¶ DD). Similarly, if the grievant is not satisfied with the response at Step II or did not receive a timely response, he may file a Step III appeal. (*Id.* at PageID.355, ¶ HH).

Hoffman indeed did not appeal the grievance at issue to Step III. In the subject grievance, dated October 31, 2019, Hoffman complained about Gdowski's allegedly cursory 407 request. (ECF No. 61, PageID.557). The Step I response suggests the grievance is resolved because Gdowski submitted a new request, which was approved, and he was scheduled for hand surgery. (*Id.* at PageID.558). Hoffman submitted a Step II appeal form on which he wrote: "Grievant is satisfied with the Step I response, but grievant Appeals to Step II to ensure [ ] there will be no question about exhaustion during future litigation." (*Id.* at PageID.559). The Step II respondent concluded the grievance was resolved. (*Id.* at PageID.560). Hoffman did not submit a Step III appeal. But there was no need to do so. Prisoners may appeal to the next steps of the process *if they are dissatisfied with the response*. MDOC policy does not provide for a prisoner's formal grievance of a resolved issue. It would be nonsensical to require a prisoner to pursue appeals of a grievance he agrees was earlier resolved. Hoffman exhausted his administrative remedies by filing a grievance at Step I that was resolved.

## IV.  RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED IN PART, DENIED IN PART**, and that the Eighth Amendment claims related to the 407 request and the January 2, 2020, request for Tylenol #4 be **DISMISSED**, and that the retaliation claim for the request for Tylenol #4 be **DISMISSED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

19

objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  July 11, 2022                                  s/Curtis Ivy, Jr.
                                                                    Curtis Ivy, Jr.
                                                                    United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on July 11, 2022.

                                                                    s/Kristen MacKay
                                                                    Case Manager
                                                                    (810) 341-7850